UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Tamino Corp,<br><br>Plaintiff,<br><br>v.<br><br>Boston Scientific Corporation,<br><br>Defendant. | Case No. 2:25-cv-330<br><br>JURY TRIAL DEMANDED |

## ORIGRINAL COMPLAINT FOR PATENT INFRINGEMENT

Tamino Corp ("Plaintiff") hereby files this Original Complaint for Patent Infringement against Boston Scientific Corporation ("Boston Scientific" or "Defendant"), and alleges, upon information and belief, as follows:

### THE PARTIES

1. Tamino Corp is a corporation organized and existing under the laws of the State of Texas with its principal place of business at 8000 Centre Park Dr, Suite 130, Austin, TX 78754.

2. Upon information and belief, Boston Scientific is a company organized and existing under the laws of the State of Delaware, and as shown below, with a place of business in this District in Tyler, Texas.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because Defendant conducts business in and has committed acts of patent infringement in this District and the State of Texas and has established

minimum contacts with this forum state such that the exercise of jurisdiction over Defendant would not offend the traditional notions of fair play and substantial justice.

5. Defendant is subject to this Court's general and specific jurisdiction pursuant to due process and/or the Texas Long Arm Statute due at least to Defendant's substantial business in the State of Texas and this District, including through its past and ongoing infringing activities, because Defendant regularly does and solicits business herein, and/or because Defendant has engaged in persistent conduct and/or has derived substantial revenues from goods and services provided in the State of Texas and this District.

6. Defendant transacts substantial business with entities and individuals in the State of Texas and this District, by among other things, willfully using the infringing methods and systems throughout the State of Texas and this District. Defendant relies on the infringing methods and systems to introduce and sell millions of products into the stream of commerce with the knowledge and expectation that they will be sold in the State of Texas and this District.

7. Defendant maintains regular, physical, continuous, and established places of businesses, including places of business for team leaders of sales, sales operation managers and system network architects, in this District, which Defendant has established, ratified, and controlled; have employed people to conduct their business from this District; and from which they have willfully infringed the Asserted Patents in order to benefit themselves in this District. Defendant commits acts of infringement in this District, including as explained further below by making and using the infringing systems in, and performing at least one step of the accused methods of the Asserted Patents, at their regular and established places of business in this District.

8. Upon information and belief, Defendant has authorized sales/customer service agents in the Eastern District of Texas (collectively "Customer Agents"). Defendant has a regular and

established place of business in this District through the Customer Agents acting as agents. Defendant manifests assent to the Customer Agents that they shall act on Defendant's behalf and subject to its control, and the Customer Agents manifest assent or otherwise consent to act. Defendant maintains "interim control" over the Customer Agents' work, in which they rely on interactions and Defendant's instructions within the scope of their work.

9. Upon information and belief, the contracts between Defendant and the Customer Agents establish (1) Defendant has the right to direct and control the Customer Agents, (2) Defendant has manifested consent that Customer Agents act on its behalf, and (3) the Customer Agents have consented to act on behalf of Defendant. The Customer Agents sell, monitor, train, oversee use, and handle complaints and returns, instruments and implants obtained from and on behalf of Defendant for customers in this District. Those activities involve storage, transport, training, monitor and exchange of goods and services and are part of Defendant's business.

10. Upon information and belief, Defendant has established and ratified the Customer Agents' places of business because the contracts affect how they perform hospital set ups, approval of procedures to be performed at hospitals with Defendant products, sales, training, handling complaints, returns. Defendant also provides the Customer Agents with all information required to properly get products approved at hospitals.

11. The Customer Agents in this district have fixed geographical locations. They are "regular" and "established" because they operate in a "steady, uniform, orderly, and methodical manner" and are sufficiently permanent. These locations are "of the defendant" because Defendant has contractual rights with them—authorized distributors in the United States.

12. Defendant ratifies the Customer Agents' locations because it exercises interim control over the Customer Agents' activities and holds out to the public that Defendant's distribution, warehousing,

marketing and sales of the products are being performed at and by Customer Agents' locations in this District.

13. Defendant also has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas at the Customer Agents' locations by the regular, physical presence of its employees.

14. Defendant also has numerous employees in the Eastern District of Texas, as evidenced by merely doing a LinkedIn search of its Tyler, TX employees, as shown below:



*See* https://www.linkedin.com/company/boston-scientific/people/?facetGeoRegion=105879823 (screenshot of LinkedIn search for Defendant's Tyler, TX employees).



*See* https://www.linkedin.com/in/stevenrackleymba/ (screenshot of a Territory Manager of Defendant in Tyler, TX).



*See* https://www.linkedin.com/in/jordan-webb-131b102b5/ (screenshot of a Clinical Specialist of Defendant in Tyler, TX).

15. As shown above, these employees are located in this District in Tyler, Texas. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.

16. Defendant's employees also not merely possess inventory. Their use in the Eastern District of Texas part of Defendant's services to its Eastern District of Texas customers, a job that falls on these employees. When sample products or inventory arrive at these employees' places of businesses, they then visit local customers to deliver or show the samples.

17. As shown below, Defendant has further solicited salespeople in public advertisements to cover the challenged venue area and preferred that those employees live in their assigned sales area. Their locations within the Eastern District of Texas are important to the business performed and defendant had intention to maintain some place of business in the Eastern District of Texas in the event any employees decided to terminate their residences as a place there.



*See* https://bostonscientific.eightfold.ai/careers?query=AF+Solutions+Specialist&start=0&location=East%2FTyler%2FBeaumont+US-TX%2C++United+States+%7C++N%2FA&pid=563602799138688&sort_by=solr&filter_distance=80&filter_include_remote=1 (screenshot of a career search results of Defendant in Tyler, TX).

18. Defendant has regular, physical presences of Defendant employees in this District conducting Defendant's business. Defendant maintains a regular and established place of business at the Defendant defined places and separate areas by the regular, physical presence of its employees.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                                                     6

19. Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. § 1400(b). As noted above, Defendant maintains a regular and established business presence in this District. *See In re Monolithic Power Sys., Inc.,* 50 F.4th 157, 160 (Fed. Cir. 2022); *see also AGIS Software Dev. LLC v. Google LLC*, No. 2:19-CV-00361-JRG, 2022 WL 1511757, at *9 (E.D. Tex. May 12, 2022); *IOT INNOVATIONS LLC, Plaintiff, v. MONITRONICS INTERNATIONAL, INC., d/b/a BRINKS HOME*, Defendant., No. 2:22-CV-0432-JRG-RSP, 2023 WL 6318049, at *5 (E.D. Tex. Sept. 11, 2023), *report and recommendation adopted sub nom. Iot Innovations LLC v. Monitronics Int'l, Inc.*, No. 222CV00432JRGRSP, 2023 WL 6300560 (E.D. Tex. Sept. 27, 2023).

## BACKGROUND AND PATENTS-IN-SUIT

20. Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 9,446,229 ("the '229 Patent" or the "Asserted Patents") relating to nerve stimulation by electrically applying high frequency (radio frequency) energy to a localized region of a body.

21. By operation of law, the Asserted Patents originally issued and exclusively vested to the named inventor, Omar Omar-Pasha, as of the issue date of the '229 Patent. *See* 35 U.S.C. § 261; *Schwendimann v. Arkwright Advanced Coating, Inc.,* 959 F.3d 1065, 1072 (Fed. Cir. 2020); *Suppes v. Katti,* 710 Fed. Appx. 883, 887 (Fed. Cir. 2017); *Taylor v. Taylor Made Plastics, Inc.,* 565 Fed. Appx. 888, 889 (Fed. Cir. 2014). The inventors, in a written instrument, and filed with the United States Patent and Trademark Office, assigned all rights, title, and interest in the Asserted Patents to [PLAINTIFF].

22. The Asserted Patents valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

23. The inventions described and claimed in the Asserted Patents were invented individually and independently by Omar Omar-Pasha.

24. The Asserted Patents includes numerous claims defining distinct inventions. As represented in Figs. 1, 16 and 26A of the '229 Patent below, the inventions generally relate to nerve stimulation by electrically applying high frequency (radio frequency) energy to a localized region of a body.



25. The priority date of the '229 Patent is at least as early as May 13, 2004. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

26. At the time of the inventions of the '229 Patent, catheters were known technical medical products which were manufactured for various intended purposes of usage in diagnostics or therapy. In addition to catheters, electrodes were used in therapy of chronic pain. Thus, electrodes for implantation were known, which would be connected to a pulse generator for permanent stimulation of the spinal cord or the nerves. There were also known electrodes for stimulation which were connected to a transducer that would be subcutaneously implanted. In this case, the pulses of the generator are transmitted inductively to the transducer through the skin of the patient. Moreover, special needles were known which are connected to a generator of pulsed high frequency. Such special needles and high frequency generators were used to trigger the release of

pain-inhibiting substances in the spinal cord by selectively stimulating nerves, thereby effecting a pain treatment. Usage of these rigid special needles, however, were frequently limited due to anatomical reasons or is avoided because of the risk of injury at introducing the special needles. Moreover, none of the prior art provided for the usage of high frequency (radio frequency) energy for electrical nerve stimulation, let alone a flexible catheter comprising a temperature sensor disposed in the distal region of the catheter. *See* '229 Patent at 1:18-44 and 2:48-53.

27. It was the inventions of the '229 Patent to provide a flexible catheter for treatment of a nervous system, which is suitable for a larger range of application than conventional catheters, electrodes or special needles, and a method for treatment of a nervous system using said catheter. A further object of the invention is to provide a catheter which is adapted for stimulation with pulsed high frequency. A further object of the invention is to provide a catheter and a method for applying pulsed radio frequency energy to a region in the spinal canal. A further object of the invention is to provide a flexible lead for treatment of a nervous system, which is suitable for a larger range of application than conventional catheters, electrodes or special needles, and a method for treatment of a nervous system using said lead. The objects of the present invention are achieved by providing a flexible catheter, particularly a flexible epidural catheter, according to the present invention, which comprises at least two electrical contacts in a distal region of the catheter; leads of the electrical contacts are located inside the catheter; two of the leads have a connection for a high frequency pulse generator for nerve stimulation. *See* '229 Patent at 2:57-67 and 3:1-12.

28. The Asserted Patents are pioneering and have been, respectively, cited as relevant prior art in 69 and 54 subsequent United States Patent Applications, including technology leaders and academia as Stanford University, Relievant Medsystems, Inc., Gyrus Acmi, Inc., Spinal Modulation, Inc., Vertech, Inc. and Cook Medical Technologies.

29. The claims of the Asserted Patents were all properly issued and are valid and enforceable for the respective terms of their statutory life through expiration and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

### DEFENDANT'S INFRINGING PRODUCTS

30. Upon information and belief, Defendant makes, sells, advertises, offers for sale, uses, or otherwise provides endoscopic targeting methods and systems, including, but not limited to, its RCE Pulsed RF Electrode products ("Accused Instrumentalities"), that utilize the Asserted Patents' patented spinal implants methods and systems.

31. As shown below, and with more detail in Exhibit A attached hereto, the Accused instrumentalities include each and every limitation of at least, but not limited to, claim 1 of the '229 Patent, and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.



*See* https://www.bostonscientific.com/content/dam/bostonscientific/eu/neurological-surgery/rf-ablation/rf-product-catalogue.pdf

32. As shown, Defendant's products include each and every limitation of at least, but not limited to, claim 1 of the Asserted Patents and therefore literally infringe these claims. Plaintiff reserves the right to assert additional claims and to assert infringement under the doctrine of equivalents in light of information learned during discovery or in view of this Court's claim construction order.

## COUNT I
## Infringement of U.S. Patent No. 9,446,229

33. Plaintiff incorporates the above paragraphs by reference.

34. Defendant without authority, made, used, sold, offered to sell, and/or imported into the United States its Accused Instrumentalities as shown above.

35. Defendant thus has infringed at least claim 1 of the '229 Patent literally and/or under the doctrine of equivalents.

36. In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services. As such, Defendant has been willfully blind to the patent rights of Plaintiff. Defendant's direct and indirect infringement of the '229 Patent has thus been committed with knowledge of the '229 Patent, making Defendant liable for direct, indirect, and willful infringement.

37. Defendant has also actively induced the infringement of at least one of claim 1 of the '229 Patent, in violation of 35 U.S.C. § 271(b), by, among other things, actively and knowingly aiding and abetting infringement of others through activities such as creating and/or distributing videos of use such as the videos above, brochures, manuals, instructional documents, and/or similar materials with instructions on creating, manufacturing, designing, assembling and/or implementing infringing products, with the specific intent to induce others to directly make, use, offer for sale, sell, and/or import into the United States products that fall within the scope of the '229 Patent,

without license or authority from Plaintiff. On information and belief, Defendant knows that the induced acts constitute infringement of the '229 Patent.

38. Defendant individually, collectively, or through others or intermediaries, has contributorily infringed in violation of 35 U.S.C. § 271(c), at least one claim of the '229 Patent by making, using, offering for sale, selling, and/or importing, material parts of the inventions claimed in the '229 Patent, which are not a staple article or commodity of commerce suitable for substantial non-infringing use, and knowing the accused parts to be especially made or especially adapted for use in an infringement of the '229 claims.

39. Defendant has been on actual notice of the '229 Patent at least as early as June 24, 2019, when it acknowledged receipt and notice of the '229 Patent, as shown below and attached hereto as Exhibit B.

> We are in receipt of your letter to Cosman Medical, Inc., dated April 23, 2019 ("*your letter*" or the "***April 23rd letter***"). We represent Boston Scientific Neuromodulation ("***BSN***"), which is the acquiror of the product referenced in your April 23rd letter, and were requested by Matthew Jorgenson, Senior IP Counsel, to review and respond to the allegations raised therein.
>
> In your letter, you identify U.S. Patent Nos. 9,446,229; 9,168,368; and 9,950,185 (the "***asserted patents***"), in relation to the Reig-Cosman Epidural (RCE) electrode catheter (the "***accused product***").

40. Defendant's direct and indirect infringement of the '229 Patent have thus been committed with knowledge of the '229 Patent, making Plaintiff liable for direct, indirect, and willful infringement.

41. Plaintiff has been damaged because of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Plaintiff in an amount that adequately compensates it for such infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

42. Plaintiff and/or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court enter judgment against Defendant as follows:

1. Declaring that Defendant has infringed the Asserted Patents;

2. Awarding Plaintiff its damages suffered because of Defendant's infringement of the Asserted Patents;

3. Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest;

4. An award to Plaintiff of enhanced damages, up to and including trebling of Plaintiff's damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of the Asserted Patents; and

5. Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/ Christopher A. Honea*
M. Scott Fuller
  Texas Bar No. 24036607
  sfuller@ghiplaw.com
Randall Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420